IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-3056-01-CR-S-MDH |
| | ) | |
| BRANDON D'ANGELO MCDONALD, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW Defendant Brandon D'Angelo McDonald, by and through counsel, and hereby submits this Sentencing memorandum in support of Defendant's request for a reasonable sentence of 60 months on Count 1 which is sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a). In support of this request, Defendant submits the following:

I. **Nature and Circumstances of This Defendant**:

Brandon McDonald was raised by his grandparents in Chicago, where he lived until he was 7 years old, "til Grandpa died." At this young age, Brandon then moved with his mom to Springfield, Missouri, leaving the Chicago area because of the gun violence 20 years ago. However, shortly thereafter in 2002, Brandon's nephew (Javon Carter) was shot and killed in Springfield.

Brandon resumed his school in the Springfield Public School system when he moved with his mother, Eartha McDonald. Brandon graduated locally at Hillcrest High School in 2004. {attached is a photograph of Brandon at his high school prom}. Brandon continued his education taking courses at OTC. Brandon has 2 young daughters and a young step-son that are

1

very important to Brandon, and vice-versa. {attached as an exhibit is a photograph of Brandon's child.} Brandon's current support group includes his grandmother Regina Tate, along with his mother, Eartha McDonald, and his father, Tim Sims. {attached as exhibits are letters of support from all three of these relatives.}

Brandon has been a victim of gun violence in the past having been shot on four (4) separate occasions. At age 16, he suffered a gunshot to his eyebrow. A couple of years later, the Defendant was shot in his leg. In 2009, he was shot in the right shoulder. In 2012, the Defendant was shot in the right upper arm. The Defendant does not mention this to the Court as a justification for his possession of a firearm in the present case, but as a backdrop into the nature and circumstances of this Defendant. It is for these reasons that Brandon has now selected as his 'home plan' upon release from prison, his grandmother's home in Mississippi in an attempt to leave both Chicago and Springfield behind.

II. **Nature and Circumstances of the Offense (there was <u>No</u> Burglary that night.)**

Regarding the night of the Defendant's arrest, Mr. McDonald wants to emphasize to the Court that there was no burglary (or attempted burglary) that night, despite the specific 911 comments. The Defendant does not dispute the specific 911 comments made to dispatch or the actions of police responding to a "burglary in progress", but no burglary had taken place in the early hours of April 6, 2016.

To summarize this, the Defendant was pulled over by police around 4 a.m. as he was leaving the alley behind 1904 W. Lee where he had just purchased a computer from one of the tenants. As Brandon and the tenant sat in the car parked in the alley discussing the computer sale, the *other tenants* of 1904 W. Lee (who were ignorant of the computer sale) called 911 against Brandon, their former roommate. As Brandon pulls away from the alley and is

2

confronted by the responding officers, Brandon pulls over and does not attempt to flee the area and does not resist arrest when he drops his bag of marijuana on the ground as he exited the vehicle.

To add details to this summary of April 6, 2016, Brandon had been staying with his finance at the John B. Hughes Apartments at 2100 N. Clifton, Springfield, Missouri. In the early hours, Brandon had received numerous text messages from one of the residents of 1904 W. Lee, (to wit Catherine Canvale) wanting to sell Brandon a computer. At this early hour, Brandon wanted to go to the convenience store at the intersection of Division and Kansas in order to purchase Blunt cigars. Since Catherine's residence at 1904 W. Lee was close on Brandon's route to the convenience store from the apartments, he stopped by to see about this computer for sale. {From John B. Hughes apartments, Google maps shows the time and distance to 1904 W. Lee as being 1.0 miles at 4 minutes, while the time and distance to the convenience store is 1.4 miles at 5 minutes; attached as exhibits.}

When Brandon got to 1904 W. Lee, he parked in the back alley as customary at that residence and sat in the car with Catherine Canvale discussing the sale of the computer for a period of minutes. It was during this time period that the *other residents* saw Brandon's vehicle parked in the alley at 4 a.m. and called 911, unaware of Catherine selling her computer.

Brandon was familiar with this house and all of the occupants of 1904 W. Lee because he had previously lived at that location, renting a room there for a couple of months earlier in the year. It was during this earlier period when Brandon and some of the *other occupants* of 1904 W. Lee got into a disagreement over a vehicle borrowed by Brandon that wasn't returned in a timely fashion.

On this case, on April 6, 2016, when police asked the resident Paul McCarthy why he called 911 on Brandon, Paul told police because "Brandon had borrowed a vehicle from his son and Brandon was arrested driving that car after he failed to return it, and it was reported stolen." {¶ 6, DOJ Report of Investigation, April 14, 2016, Officer Pinnegar, Discovery Bate stamp 00028.} In a SPD report of the same event (and the same question of why he called 911 on April 6, 2016) Paul McCarthy reported to Officer Carlson that Paul had heard a vehicle pull into his backyard but did not see any headlights, and that he did not actually see Brandon. {Supplemental SPD Report, Officer Carlson, April 6, 2016 @ 5:35 a.m., Discovery bate stamped 00038.}

In any event, unaware that the *other tenants* were calling 911, Brandon and Catherine sat in the car discussing the computer for several minutes (Catherine did not have a power cord to the computer). Brandon eventually bought the computer from Ms. Canvale who then got out of the car and returned to her residence at 1904 W. Lee through a side door as Brandon pulled away from the alley. Seconds later, Brandon is pulled over by police responding to the "burglary in progress" call made by the *other tenants*. When police activated their lights, Brandon complied and pulled over. He did not flee in the car or attempt to run on foot. Brandon did not resist his arrest after he dropped his bag of marijuana on the ground. Brandon cooperated with the responding officers at the location of his arrest as well as the investigating Detective when questioned hours later at the jail.

Brandon was arrested at the scene around 4:00 a.m. and is interviewed later that morning at the jail by a detective at 9:35 a.m. Post-miranda, Brandon tells the detective that he went to "Paul and Kelley's house to buy a computer…from Catherine/Katie....[That he] paid $70 cash for the computer and it was in the back seat of the car he was stopped in." {SPD Supplemental Report, Officer White April 11, 2016 at 8:06 a.m., Discovery Bate stamp 00049.}

4

This Catherine Canvale was interviewed by police about the events of April 6, 2016. Catherine told the officers that in the early hours that day, she was outside her residence of 1904 W. Lee when she got into the front passenger seat of the car Brandon was driving, parked in the alley south of 1904 W. Lee. Catherine said that the two of them spoke about Brandon buying the computer for $125, that Brandon paid her $70 for the computer and that she remembered Brandon putting the computer in the back seat in the car. {SPD Supplemental Report, Officer White April 11, 2016 at 8:06 a.m., Discovery Bate stamp 00050.} Counsel would note that Ms. Canvale's statements referenced above were made to officers at 12:20 p.m. on April 6, 2016 at the time when the Defendant was locked up at the Greene County Jail, with his similar statements made to the Detective hours earlier at 9:35 a.m.

This lengthy discussion about there <u>not</u> being any burglary when those *other tenants* called 911 has been the set up to describe the actions of Brandon that early morning hour <u>after</u> police stopped him. Upon police making contact with Brandon, his actions were compliant with the officers. Dash cam footage shows Brandon dropping his bag of marijuana when he gets out of the car, it shows Brandon complying with the officers as they arrest him for the possession of the marijuana, and it shows Brandon responding accordingly to the officers for the next 40 minutes as they process the vehicle incident to his arrest.

Further, the Defendant has taken responsibility for his actions and he has admitted to possessing the methamphetamine and the firearm on April 6, 2016. Brandon's Allocution Statement talks about having to pay his debt for these crimes in the form of prison time. Brandon's request for leniency is not for himself but for the family that he leaves behind and is asking for a reasonable sentence of 60 months for the offense of possession with intent to

5

distribute, as charged in Count 1, and for a sentence of 60 months for possessing the firearm as charged in Count 2. {The Defendant's Allocution Statement is attached as an Exhibit.}

III. **Bureau of Prison Issues**

    A. **UNICOR Programs within Bureau of Prisons**

Defendant does desire and requests placement in the UNICOR vocational training programs. Specifically, the Defendant has an interest in learning welding. The Defendant also has some experience in the music business and would like to pursue any field associated with the presenting of and producing of music. The Defendant is seeking the necessary job skills that will allow him to provide for himself and his family immediately upon his release. The Defendant is requesting placement in a BOP facility that offers the UNICOR program for these areas of interest or for any other areas of interest that will provide him with useful job skills.

    B. **RDAP Program within Bureau of Prison**

The Defendant has a history of abusing drugs. The Defendant would benefit from any residential drug treatment program that is offered by the Bureau of Prisons during his sentence. The Defendant requests placement in a BOP facility that will allow him into the RDAP program.

    C. **BOP Facility Request**

The Defendant has selected three (3) BOP facilities that offer the RDAP program and his first request would be placement at FC1 Yazoo City in Mississippi which would be near his grandmother, Regina Tate living in Hattiesburg, Mississippi. The Defendant's second request would be FC1 Memphis (Tennessee) followed by FC1 Forrest City-M in Arkansas. Realizing any specific placement is up to the administration of BOP, the Defendant respectfully requests this Court suggest his placement in his selected BOP sites mentioned above.

D. **Credit for Jail Time Awaiting Sentencing**

Pursuant to 18 U.S.C. § 3585(b), a defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences as a result of the offense for which the sentence was imposed.

Defendant has been custody continuously since April 22, 2016 when he was arrested on the Indictment. Upon the Defendant's sentencing date of September 11, 2018, the Defendant will have spent at least 873 days detained for this offense. Pursuant to 18 USC §3585, Defendant requests that he be given credit for these 873 days confinement prior to his sentence being imposed.

WHEREFORE, counsel for Defendant Brandon D'Angelo McDonald respectfully requests for a reasonable sentence of 60 months on Count 1 and for a sentence of 60 months on Count 2, for placement in the UNICOR and RDAP programs within the Bureau of Prisons during his imprisonment period, for credit of at least 873 days credit for time awaiting sentence and for such other and further relief as the Court deems just and proper.

BY __/s/ David K. Back_____
David K. Back, Attorney for Defendant
Missouri Bar No. 46338
2733 E. Battlefield, #343(temporary mailing address)
Springfield, Missouri 65804
Telephone: 417-864-9991
davidbacklaw@gmail.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the Defendant's Sentencing Memorandum was delivered on September 5, 2018 to the CM/ECF system of the United States District Court for the Western District for electronic delivery to all counsel of record.

__/s/ David K. Back_____
David K. Back, Attorney for Defendant